IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

HEATHER RAE S. P.,[1]

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

    Defendant.

No. 6:17-cv-01152-HZ

OPINION & ORDER

Drew L. Johnson
Drew L. Johnson, P.C.
1700 Valley River Drive
Eugene, Oregon 97405

Kathryn Tassinari
Harder Wells Baron & Manning, PC
474 Willamette Street, Suite 200
Eugene, OR 97401

    Attorneys for Plaintiff

---

[1] In the interest of privacy, this Opinion and Order uses only Plaintiff's first name and the initial of her last name.

1 – OPINION & ORDER

Billy Williams
United States Attorney
Renata Gowie
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

Catherine C. Escobar
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104

        Attorneys for Defendant

HERNÁNDEZ, District Judge:

        Plaintiff Heather Rae S. P. brings this action for judicial review of the Commissioner's final decision denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The issues before the Court are whether the Administrative Law Judge ("ALJ") erred by: (1) discounting Plaintiff's testimony; (2) discounting the opinion of John Ward, M.D., Plaintiff's primary-care provider; and (3) giving great weight to the opinion of John B. Nance, Ph.D., a nonexamining psychologist, but failing to fully account for the limitations set out by Dr. Nance in the ALJ's assessment of Plaintiff's residual functional capacity ("RFC"). The Court affirms the Commissioner's final decision.

## BACKGROUND

        Plaintiff applied for DIB and SSI on November 17, 2011, alleging a disability onset date of January 1, 2006. Tr. 192, 194.[2] Plaintiff's applications were denied initially and upon reconsideration. Plaintiff's first administrative hearing was held on October 9, 2013, before ALJ

---

[2] "Tr." refers to the administrative record transcript, filed here as ECF 11.

2 – OPINION & ORDER

John Michaelson. Tr. 35. ALJ Michaelson denied Plaintiff's claim in a written decision issued October 31, 2013. Tr. 13–23. The Appeals Council denied review, rendering ALJ Michaelson's decision final. Tr. 1–6.

On May 5, 2016, United States Magistrate Judge Youlee Yim You reversed the Commissioner's decision and remanded the case for further administrative proceedings. Tr. 547–70. Judge You found ALJ Michaelson erred in weighing Dr. Ward's opinion, but did not err when he discredited Plaintiff's testimony or the opinion of Connie Hume-Rodman, M.D. Tr. 656–67. Judge You, however, found "[a]lthough the ALJ erred by providing inadequate reasons for according little weight to Dr. Ward's opinion, the record nonetheless raises crucial questions about the extent to which plaintiff's various symptoms and impairments affect her ability to function in the workplace." Tr. 669. Accordingly, Judge You remanded the case for further administrative proceedings because "serious doubt remains whether plaintiff is disabled under the Act." Tr. 669.

In the meantime, on October 21, 2015, Plaintiff filed a subsequent application for SSI. Tr. 756. In its order following Judge You's remand of the case back to the Commissioner, the Appeals Council consolidated the October 21, 2015, application with the original November 17, 2011, applications. Tr. 673. ALJ Elizabeth Watson presided over Plaintiff's remand hearing on November 2, 2016.[3] Tr. 527. In a written decision dated March 29, 2017, ALJ Watson also determined Plaintiff was not disabled. Tr. 536–50.

---

[3] The transcript of the remand hearing indicates the hearing took place on March 3, 2015. Tr. 565. This is an error. The discussion that took place at the remand hearing makes clear that the hearing took place sometime around November 2016. *See* Tr. 577 (referring to a September 2016 consultative evaluation as having occurred "a couple months ago."). The ALJ's Decision indicates the hearing took place on November 2, 2016. Tr. 536. Accordingly, the Court finds the remand hearing took place on November 2, 2016.

SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the RFC to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§

404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 1, 2006, the alleged onset date. Tr. 538–39.

At step two, the ALJ determined Plaintiff had the following severe impairments: fibromyalgia; sleep apnea; lumbar degenerative disc disease; major depressive disorder; dysthymia; adjustment disorder with depression; post-traumatic stress disorder; anxiety disorder; learning disorder, not otherwise specified; pain disorder, not otherwise specified; and chronic pain syndrome. Tr. 539.

At step three, the ALJ found Plaintiff's impairments or combination of impairments did not meet or equal the severity of one of the listed impairments. Tr. 539–41.

Before step four, the ALJ determined Plaintiff had the RFC to perform work consistent with the following limitations:

> [Plaintiff] has the residual functional capacity to perform light work with lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, sitting about eight hours, standing about three hours, and walking about two hours each in an eight-hour work day with normal breaks. The claimant will require a cane as need for ambulation. She must avoid walking on uneven or rough terrain. She is limited to no more than occasional bilateral overhead reaching and no more than frequent bilateral reaching in other directions. The claimant is limited to no more than frequent bilateral foot control operation. She is limited to no more than occasional climbing of ramps or stairs and must never climb ladders, ropes, or scaffolds. She must never balance, stoop, kneel, crouch, or crawl. The claimant must avoid unprotected heights, extreme cold, and extreme heat. She is limited to understanding and carrying out simple instructions. She is limited to no contact with the general public and no more than occasional contact with coworkers and supervisors.

Tr. 541–42.

At step four, the ALJ determined Plaintiff was unable to perform her past relevant work as a caregiver. Tr. 549.

At step five, the ALJ concluded other jobs existed in the national economy that Plaintiff could perform including work as a final assembler; document preparer, microfilming; and masker. Tr. 549–50. Accordingly, the ALJ concluded Plaintiff was not disabled. Tr. 550.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff contends the ALJ's decision was not supported by substantial evidence and contains legal errors. In particular, Plaintiff argues the ALJ made the following three errors. First, the ALJ improperly discredited Plaintiff's testimony. Second, the ALJ improperly discredited the opinion of Dr. Ward, Plaintiff's primary-care provider. Third, the ALJ failed to

fully incorporate Dr. Nance's opinion into the ALJ's assessment of Plaintiff's RFC despite giving Dr. Nance's opinion "great weight."

## I. Plaintiff's Testimony

Plaintiff contends the ALJ improperly rejected her testimony regarding the severity and extent of her limitations. The ALJ is responsible for determining credibility. *Vasquez*, 572 F.3d at 591. Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm. Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (holding that if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's

reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks omitted).

As the Ninth Circuit further explained in *Molina*;

> While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.] Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

674 F.3d at 1112–13 (internal citations and quotation marks omitted).

At the initial October 9, 2013, hearing, Plaintiff testified her fibromyalgia pain was primarily responsible for her inability to work. Tr. 44. Plaintiff indicated her fibromyalgia remained largely uncontrolled because "[t]he things [doctors] want to do insurance won't cover and I can't afford," although marijuana and valium helped somewhat. Tr. 44, 54–55. Plaintiff explained she was not receiving any mental-health treatment or medication because "[t]here's no medications they can give me because everything they've tried, all the antidepressants and everything, I've had really bad reactions including trying to kill myself on them." Tr. 46.

Plaintiff indicated she could perform a broad range of activities, but only "for a short amount of time." Tr. 45. For example, Plaintiff testified she could load the dishwasher, but must "sit down halfway through." Tr. 45. Plaintiff stated she was able to cook some meals and perform other chores, but that she needed help shopping because going to the store was "very exhausting." Tr. 48–49. Plaintiff told the ALJ she spent three hours per day on social-media websites, but Plaintiff said that did not "take a whole lot of reading or concentration." Tr. 50. Otherwise, Plaintiff testified she rarely left her house because she was often overcome by stress

in public places. Tr. 51. In general, Plaintiff testified she had to lie down most of the day. Tr. 58–59.

In her Adult Function Report dated January 30, 2012, Plaintiff stated she is in "constant pain," "tires out easily," and that her "anxiety and depression makes it extremely hard to be around people." Tr. 252. Plaintiff stated she gets only three hours of sleep per night because she "wake[s] up constantly in pain." Tr. 253. Plaintiff indicated her conditions affect her abilities to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate, understand, follow instructions, use her hands, and get along with others. Tr. 257. Plaintiff reported she is able to lift 10 pounds, sit for 30 minutes at a time, and walk one mile before needing to rest for 10 minutes. Tr. 237.

At the November 2, 2016, remand hearing Plaintiff testified she applied for disability on the advice of her doctors. Tr. 591. Plaintiff also stated she applied for disability because her conditions were "causing her too much pain to even get through day-to-day life" and her mental-health conditions rendered her unable to function in public. Tr. 591–92. Plaintiff testified her ability to concentrate had deteriorated to that point that she "went from an almost 4.0 student to failing every class until [she] couldn't continue anymore." Tr. 592. With respect to accommodations made for her at school and her reading limitations, Plaintiff stated:

> I had longer times to do testing. I had times for longer, extended breaks whenever I needed one, special formats for books and things like that. They would put them on audio so that I could listen to them because I have -- where I used to be an avid reader, now I have a hard time even reading one paragraph in a sentence because -- or one paragraph in anything or even a sentence sometimes. I have to read over, you know, ten times, and I still might not have it -- understand it correctly.

Tr. 594.

The ALJ discredited Plaintiff's testimony on the basis that the medical record did not support Plaintiff's allegations of "extreme functional limitations," Plaintiff reported

9 – OPINION & ORDER

improvement with certain treatments, and Plaintiff demonstrated resistance to treatment recommendations.

The ALJ reasonably found the medical record did not support Plaintiff's allegations of "extreme limitations." For example, although Plaintiff alleged very significant reading and concentration limitations, in a learning-disability evaluation Plaintiff's "basic skill areas of reading and written language was average with low average reading fluency." Tr. 306. Although the evaluation indicated some impairment in reading and concentration, those limitations were in line with the ALJ's findings and were significantly milder than Plaintiff alleged. Moreover, although Plaintiff frequently complained of back pain, Dr. Ward noted on November 8, 2013, that Plaintiff's "MRI findings do not specifically correlate to her current symptoms." Tr. 524. Finally, on January 29, 2015, Christopher Smith, Ph.D., observed as follows:

> On exam patient was at times very dramatic. Her statements of "I went from a 4.0 student to a 2.5 student overnight" are difficult to verify but are inconsistent with other statements made during the interview. She endorses ALL symptoms that were given as examples to her but can't volunteer many without prompting. She has a long history of unstable relationships, instability and poor coping. There were many times during the interview that this examiner felt she was trying to impress me with the severity of her problems even when her statements were markedly out of proportion to her demonstrated behaviors and abilities.

Tr. 1092. Accordingly, the Court finds the ALJ reasonably discredited Plaintiff's subjective symptom testimony on the basis that it was not supported by medical findings.

The ALJ also reasonably found Plaintiff's symptoms improved with treatment. The ALJ is correct that Plaintiff reported improved symptoms after undergoing osteopathic manipulative treatment, to the extent that on March 8, 2016, she reported to Katherine Lea McDonough, D.O., that she was "generally doing well," and only had "mild chronic complaints in multiple regions." Tr. 1202. Notwithstanding this incremental improvement, the record as a whole indicates Plaintiff's complaints of significant physical limitations persisted throughout the alleged period

of disability. Accordingly, although the Court concludes the ALJ's finding in this respect to be reasonable, this rationale carries less weight than the other reasons the ALJ provided for discrediting Plaintiff's testimony.

Finally, the ALJ discredited Plaintiff's testimony on the basis that Plaintiff demonstrated resistance to treatment recommendations, from which the ALJ inferred Plaintiff's conditions were not as limiting as she alleged. The ALJ's finding is amply supported by the record, and the inference the ALJ drew therefrom is rational. As the ALJ noted, Plaintiff declined to consider using a heel lift or pursuing an occipital nerve block as suggested by Dr. McDonough. Tr. 1233, 1249. Moreover, multiple treatment providers noted Plaintiff was uncooperative or resistant to recommended treatment. For example, treatment providers at Oregon State University Counseling and Psychological Services repeatedly noted Plaintiff was "very oppositional and was extremely judgmental of anything I suggested." Tr. 319. *See also* Tr. 321, 322, 324. Plaintiff continued to show resistance to mental-health treatment throughout the record. For example, Plaintiff repeatedly declined the suggestions of Dr. Ward and Dr. McDonough that she obtain mental-health treatment (often providing different rationales for refusing to do so) even though treatment providers stressed that mental-health treatment would also help Plaintiff managed her pain symptoms. Tr. 879, 886, 913, 1069. Moreover, Dr. Smith noted Plaintiff "reports she has received counseling intermittently throughout her life and some pharmacotherapy but that 'nothing has worked the way it is supposed to'; she describes paradoxical reactions to every medication that she has tried, even well before the medication could have taken effect." Tr. 1090. In light of Plaintiff's allegations of very significant physical and mental limitations, the ALJ reasonably discredited Plaintiff's subjective symptom reporting on the basis that she showed resistance to treatment recommendations.

The Court concludes these reasons together amount to clear and convincing reasons, supported by substantial evidence, to discredit Plaintiff's testimony. The Court notes the ALJ did not completely discredit Plaintiff's testimony. To the contrary, the ALJ included in her assessment of Plaintiff's RFC significant functional limitations attributable to Plaintiff's physical and mental complaints. The ALJ, however, appropriately found the full extent of Plaintiff's allegations were not credible for the reasons the ALJ provided. Accordingly, on this record the Court concludes the ALJ did not err when she discredited Plaintiff's testimony.

## II.     Dr. Ward's Opinion

Plaintiff next contends the ALJ erred when she discredited the opinion of Dr. Ward, Plaintiff's primary-care provider.

Social security law recognizes three types of physicians: (1) treating; (2) examining; and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. §§ 404.1527(c)(1)–(2), 416.927(c)(1)–(2). Moreover, more weight is given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012.

If the treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If the treating physician's opinion is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing" reasons supported by substantial evidence in the record. *Ghanim*, 763 F.3d at 1160–61.

Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" which are supported by substantial evidence in the record. *Id.* at 1161; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). And, when a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the ALJ must still articulate the relevant weight to be given to the opinion under the factors provided for in 20 C.F.R. § 416.927(c)(2)–(6). *Ghanim*, 763 F.3d at 1161; *Orn*, 495 F.3d at 632–33.

Dr. Ward submitted two opinions. In his first opinion, dated October 26, 2013, Dr. Ward wrote to Plaintiff's counsel:

> This letter is in response to your letter faxed on October 7, 2013. You asked if in my opinion is patient able to engage in full-time employment. At this time, it is my opinion that she is unable to engage in full-time [*sic*] due to her multiple chronic, very limiting pain issues. She would be unable to attend an 8 hour per day job with normal break periods without missing more than 2 days per month due to these conditions.

Tr. 501. On October 25, 2016, Dr. Ward again wrote to Plaintiff's counsel:

> I am writing in response to let her [*sic*] concerning [Plaintiff's] ability to work. It is my opinion that at this time she is unable to engage in full-time employment. She is unable to attend an eight-hour workday was normal breaks, 5 days a week on a sustained basis. She would likely miss more than 2 days a month from work due to her medical conditions.
>
> [Plaintiff] suffers from multiple medical conditions including mass cell disease, chronic low back pain, chronic pain syndrome, and PTSD. This combination of issues makes it likely that she is unable to work on a consistent basis.

Tr. 1333.

The ALJ discredited Dr. Ward's opinions on the basis that they were not sufficiently specific to assist the ALJ in assessing Plaintiff's RFC and were not supported by objective findings in the record. Dr. Ward's opinions were contradicted by, among others, the opinion of the nonexamining physician Peter A. Bernardo, M.D. Tr. 643–45. Accordingly, the ALJ was

13 – OPINION & ORDER

required to provide specific and legitimate reasons to discredit Dr. Ward's opinions. *See Bayliss*, 427 F.3d at 1216.

The Court finds the ALJ's reasons for discrediting Dr. Ward's opinions to be specific and legitimate and, therefore, the Court concludes the ALJ did not err in her consideration of Dr. Ward's testimony. Both of Dr. Ward's opinions amount to little more than statements that Dr. Ward believes Plaintiff cannot engage in full-time work. Although Dr. Ward was slightly more specific in his October 25, 2016, letter, he still merely opined Plaintiff could not sustain full-time employment and listed Plaintiff's conditions, but did not provide any analysis relevant to the function-specific analysis that the ALJ must conduct. An ALJ may reject a physician's testimony on the basis that it is vague in terms of work-related limitations. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). *See also Smith v. Comm'r Soc. Sec. Admin.*, No. 6:14-cv-01606-MA, 2015 WL 7720502, at *3–*4 (D. Or. Nov. 30, 2015). Accordingly, the ALJ reasonably discredited Dr. Ward's letters on the basis that they were insufficiently specific.

The Court is less persuaded by the ALJ's finding that Dr. Ward's opinion was unsupported by medical findings. In light of the general nature of Dr. Ward's opinion, it is difficult to determine whether the findings in the medical record support Dr. Ward's assessment of Plaintiff's functionality.

Nonetheless, the Court concludes the ALJ's rationale regarding the vagueness of Dr. Ward's letters amounts to a specific and legitimate reason to discredit Dr. Ward's opinion. Accordingly, on this record the Court concludes the ALJ provided legally sufficient reasons for discrediting Dr. Ward's testimony.

## III. Dr. Nance's Opinion

Plaintiff next contends the ALJ insufficiently assessed Dr. Nance's testimony. In particular, although the ALJ gave Dr. Nance's opinion "great weight," Plaintiff contends the ALJ failed to explain contradictory statements in Dr. Nance's testimony regarding whether Plaintiff had "marked" or "moderate" limitations in her ability to maintain concentration, persistence, and pace.

Dr. Nance initially testified Plaintiff had a marked limitation in her ability to maintain concentration, persistence, and pace. Tr. 582. Shortly thereafter in his testimony, however, Dr. Nance explained "I think, in terms of her ability to sustain concentration, persistence, *if we were involved in detailed instructions*, I would place a marked limitation. In terms of her ability to maintain attention and concentration for extended periods, a moderate limitation." Tr. 583 (emphasis added). When asked about Plaintiff's capabilities with regard to "unskilled work, where they're limited to understanding and carrying out simple instructions," Dr. Nance stated "I don't see anything in the psychological realm that would preclude that." Tr 585–86.

In follow-up medical interrogatories dated December 17, 2016, Dr. Nance marked that Plaintiff had "moderate" difficulties in maintaining concentration, persistence, or pace. Tr. 1340. Dr. Nance later explained:

> In reference to the moderate limitations in concentration, persistence, and pace the claimants [*sic*] native intelligence and acquired experience impose few limitations. The constant pain is a distraction that will limit her ability to sustain concentration on complex instructions for the periods required in gainful employment. Like wise [*sic*] her adaptive skills are limited and she should avoid independent goal setting. Quota driven work is beyond her present capacity. Given sufficient motivation it is my opinion that the claimant can sustain efforts on simple repetitive work sufficiently to sustain gainful employment.

Tr. 1345.

Although the Court acknowledges portions of Dr. Nance's testimony were unclear, viewed as a whole Dr. Nance opined that although Plaintiff would not be capable of sustaining concentration, persistence, or pace during work activities that involved detailed instructions, her limitations were not as significant with regard to activities that involved unskilled work with simple instructions. Dr. Nance unambiguously opined Plaintiff could perform such unskilled work. Because the ALJ limited Plaintiff to "understanding and carrying out simple instructions," the Court concludes the ALJ's assessment of Plaintiff's RFC was a reasonable interpretation of Dr. Nance's testimony.

Accordingly, on this record the Court concludes the ALJ did not err when she gave "great weight" to Dr. Nance's testimony and incorporated Dr. Nance's opinion into the ALJ's assessment of Plaintiff's RFC.

## CONCLUSION

For these reasons, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

DATED this 30 day of July, 2018.

_____
MARCO A. HERNÁNDEZ
United States District Judge